IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 2000 Session

**STATE OF TENNESSEE v. ELIZABETH DAVIS**

**Appeal from the Criminal Court for Unicoi County**
**No. 4387      Robert E. Cupp, Judge**

**No. E1999-00373-CCA-R3-CD**
**September 19, 2000**

The appellee, Elizabeth Davis, was indicted by a Unicoi County Grand Jury on November 20, 1995, for four counts of theft of property. On March 2, 1999, the State submitted a motion to the trial court to amend the indictment to correct the dates of the offenses set forth in all counts of the indictment and to reduce the value of the money alleged stolen in Count Four of the indictment. Following a hearing, the trial court denied the State's motion, whereupon the State requested the entry of an order of nolle prosequi as to all counts of the indictment. Instead, at the appellee's request, the trial court dismissed the indictment with prejudice pursuant to Tenn. R. Crim. P. 48(b). The State now brings this appeal as of right challenging both the trial court's dismissal of the indictment with prejudice and the trial court's denial of its motion to amend the indictment. Following a review of the record and the parties' briefs, we reverse the order of dismissal and remand this case for proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Reversed and Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., joined. JOSEPH M. TIPTON, J., filed a dissenting opinion.

Paul G. Summers, Attorney General and Reporter, William C. Bright, Assistant Attorney General, Ken Baldwin, Assistant District Attorney General, for the appellant, State of Tennessee.

Clifford K. McGown, Jr., Waverly, Tennessee, David F. Bautista, District Public Defender, and Deborah Black Huskins, Assistant District Public Defender, for the appellee, Elizabeth Davis.

**OPINION**
In this appeal as of right, the State challenges the trial court's dismissal with prejudice of an indictment charging the appellee with four counts of theft and the court's denial of its motion to amend the indictment. Following a review of the record and the parties' briefs, we reverse the trial court's order of dismissal and remand this case for proceedings consistent with this opinion.

# I. Factual Background

The appellee was indicted on November 20, 1995, by a Unicoi County Grand Jury for four counts of theft. Prior to these criminal proceedings, the appellee owned a company named Cross Country Title and Real Estate Services. The company, which was located successively in Bryant, Alabama, and Grand Prairie, Texas, regularly closed real estate transactions in Tennessee on behalf of the Tennessee Department of Transportation. With respect to each transaction, the State of Tennessee sent the appellee a check for disbursements necessary to acquire the particular tract of land. The appellee in turn deposited the individual check into an interest bearing escrow account at Erwin National Bank in Erwin, Tennessee, a town located in Unicoi County. Several people, including the appellee, a relative and employee of the appellee named Regina Ellis, and, possibly, another relative and employee named Michael Davis, were authorized to withdraw funds from this account. The indictment at issue in this case arose from allegations that the appellee had misappropriated both state funds deposited in this escrow account and interest that had accrued in the account.

> Count One of the indictment provided that
> Elizabeth Davis heretofore, to wit, on or about the 14th day of May, 1993, in the County aforesaid and before the finding of this indictment, with intent to deprive the owner thereof, did knowingly and unlawfully exercise control over $70,100.00 in funds, the property of the State of Tennessee, which funds had been entrusted to the said Elizabeth Davis, doing business as Cross Country Title and Real Estate Services, as a closing agent for right of way purchases for the State of Tennessee, Department of Transportation, said unlawful act being in violation of Section 39-14-103 . . . .

In identical language, Count Two charged the appellee with the theft of $17,450 on or about May 14, 1993, and Count Three charged the appellee with the theft of $4,100 on or about September 29, 1993. Finally, Count Four provided that

> Elizabeth Davis, on December 28, 1988 to on or about March 31, 1993, . . . in the County aforesaid and before the finding of this indictment, did unlawfully and knowingly obtain control of approximately $61,700.00 in interest paid on funds of the State of Tennessee, said funds having been deposited by the said Elizabeth Davis in an interest bearing escrow account and being the lawful property of the State of Tennessee, said unlawful acts being in violation of Section TCA 39-14-103, Tennessee Code Annotated . . . .

On March 2, 1999, approximately three years and three months following the appellee's indictment, the State filed a motion to amend the indictment to correct the dates of the offenses. Specifically, the State wished to amend (1) Count One to reflect the commission of the offense between September 3, 1990, and September 28, 1992; (2) Count Two to reflect the commission of the offense between November 4, 1990, and September 28, 1992; (3) Count Three

to reflect the commission of the offense between February 3, 1991, and September 28, 1992; and (4) Count Four to reflect the commission of the offense between September 11, 1989, and September 28, 1992. The State also asked that the amount of money alleged stolen in Count Four be reduced to $32,748. At the time of the State's motion, the appellee's case was scheduled for trial on March 17, 1999, fifteen days later.

On the same day on which the State filed its motion to amend the indictment, the trial court conducted a hearing. At the hearing, the prosecutor explained to the court that another attorney had originally been assigned to this case. Following his own assignment to and review of the case, the prosecutor noticed several errors in the indictment. In particular, the dates set forth in Counts One through Three of the indictment were clearly incorrect as the appellee had allegedly stolen the funds at issue over a period of years.

In addressing the State's motion, the court initially noted that
[f]or the record, I know nothing about this case. I was called and asked if I would meet with the DA's office and defense attorneys one day last week. I agreed to do that at which time I was somewhat given some idea of the issues in this case and the complexity of it.
Based upon his limited knowledge of the case, the court expressed numerous concerns about the case and about the State's motion to amend the indictment. The court voiced its outrage at the State's negligence in monitoring the appellee's activities at the time of the alleged offenses and the consequent loss of state funds. The court criticized the State's investigation and prosecution of the thefts and expressed doubts concerning the strength of the State's case. The court also noted the length of time the case had been pending on the court's docket and concluded that it would not continue the date of the trial under any circumstances. Accordingly, the court observed that, were it to grant the State's motion to amend the indictment, defense counsel would not have adequate time to adjust the appellee's defense to the amended indictment. The court asserted, "[T]he best team of lawyers in the world couldn't get ready for a case of this magnitude."

Defense counsel then interjected that she had, in fact, "relied upon the dates alleged in the indictment" in preparing for trial. Specifically, she stated:
There's no way I could defend against [the amended indictment]. A time frame of a couple of years, I can't - - I - - I'm prepared for trial based upon the specific dates which the State set out in their 1995 indictment.
However, defense counsel also admitted that she had received full discovery from the State by late November 1998 and, indeed, had reviewed discovery materials together with the prosecutor. She conceded that she had "always known" that the State could not prove that the alleged thefts occurred on the dates set forth in the original indictment and noted that those dates did not match the chronology of events set forth in discovery materials. Finally, she introduced as exhibits several documents that she had received during discovery, including an April 19, 1995 report by Special Agent Shannon Morton of the Tennessee Bureau of Investigation, a transcript of an April 18, 1995

telephone interview between Special Agent Morton and Regina Ellis, and a January 1995 "Department of Transportation Review of Misappropriated Right-of Way Funds."

These discovery materials, particularly the Department of Transportation Review, set forth in detail the nature of the State's case, including the different amounts of state funds allegedly stolen by the appellee and the chronology of events underlying the State's prosecution. Specifically, the materials indicate that the appellee's company, Cross Country Title and Real Estate Services, opened the interest bearing escrow account at the Erwin National Bank on August 25, 1989. Ensuing deposits into the escrow account primarily comprised "state-issued warrants" or checks, although the appellee apparently commingled some personal funds with the state funds in the account. In all, there were forty-four individual deposits of state funds totaling $2,803,810.27. Deposits originating from sources other than the State amounted to $126,739.27.

On September 10, 1990, the Department of Transportation sent to the appellee the $70,100 referred to in Count One of the indictment for the purpose of closing a real estate transaction in Knox County. The appellee deposited the money into the escrow account at Erwin National Bank, but failed to complete the closing. The Department began to make inquiries concerning this closing in September of 1992.[1]

On September 25, 1990, the Department similarly sent the appellee the $17,450 referred to in Count Two of the indictment for the purpose of closing the purchase of yet another tract of land. Again, the appellee deposited the money into the escrow account at Erwin National Bank, and, again, the appellee failed to complete the requested closing. The Department began to make inquiries concerning this closing in January of 1993.

On May 14, 1993, the Department asked the appellee to return both the $70,100 and the $17,450. When the appellee failed to comply with the Department's request, the Department reported the loss of the state funds to the Division of State Audit of the Comptroller's Office on September 28, 1993.

On the following day, September 29, 1993, the appellee informed the Department that she had lost another $4,100, the amount referred to in Count Three of the indictment. This money had been sent to the appellee on January 17, 1991, for the purpose of closing the purchase of a tract of land, and the appellee had deposited the money into the escrow account at the Erwin National Bank. Once again, the appellee failed to complete the closing and was unable to reimburse the $4,100 to the State.

According to the Department of Transportation Review, the appellee was also unable to account for $34,601.07 of interest earned on all funds deposited into the escrow account at the Erwin National Bank since August 25, 1989. The Review further noted the loss of $28,649.34 of

---

[1] According to the prosecutor, the Department of Transportation explained to him that it did not investigate the appellee earlier because its agents frequently require several years to close a real estate transaction.

interest earned on state funds deposited into a second escrow account at the First Tennessee Bank in Chattanooga, Tennessee between December 30, 1988, and April 1, 1992. The *total* amount of interest attributable to state funds and for which there was no accounting was $61,700, the amount referred to in Count Four of the indictment.

The Department of Transportation Review alleged that, during the period in which the appellee maintained the escrow account at Erwin National Bank, she periodically withdrew funds from that account for her personal use and for her company's expenses. For example, she disbursed money to various relatives, including paying a relative's school tuition. She paid rent and purchased gasoline, "labor expenses," and "craft supplies." Additionally, she transferred a significant amount of money from the escrow account to her personal bank account in Grand Prairie, Texas.

Notwithstanding defense counsel's full knowledge of the above information for at least three months before the State's motion to amend the indictment and approximately four months before the scheduled trial date, the court denied the State's motion. In this regard, the court reiterated its refusal to continue the trial date and its opinion that defense counsel would be unable to adjust the appellee's defense to the amended indictment within the remaining fifteen days before trial. Applying Tenn. R. Crim. P. 7(b), the court concluded that, although the proposed amendments would not charge additional or different offenses,

> to amend this indictment at this late stage after the State's had all this
> time with not only the TBI, Department of Transportation, and what
> other agencies I'm not sure, work on this case to attempt to amend
> this case on March the 2nd which it's set for March 17th for trial, . . .
> in fact would prejudice - - prejudice this defendant.

Following the court's ruling, the State indicated its intention to file a motion pursuant to Tenn. R. App. P. 9 requesting an interlocutory appeal. The court initially stated that it would grant such a motion but later rescinded this statement at a hearing on March 18, 1999. At this March 18 hearing, the court announced, instead, that it intended to conduct a trial in this case within ten working days. In light of the court's ruling upon its motion to amend the indictment, the State requested the entry of an order of nolle prosequi as to all counts of the indictment. The appellee in turn asked that the trial court dismiss the indictment with prejudice pursuant to Tenn. R. Crim. P. 48(b). The trial court granted the appellee's motion, stating

> I just don't think this case should have ever been here. . . . [T]his case
> is a travesty of justice. That's all it is. I mean, the State has failed to
> do anything and now they are trying to put the burden on you to
> correct the situation that they couldn't take care of.

## II. Analysis

### a.   Tenn. R. Crim. P. 48(b)

Again, the State challenges the trial court's dismissal of the indictment with prejudice pursuant to Tenn. R. Crim. P. 48(b). We initially note that the decision to dismiss an indictment pursuant to Tenn. R. Crim. P. 48(b) is within the discretion of the trial court and will not be reversed

by this court absent an abuse of that discretion.  State v. Benn, 713 S.W.2d 308, 311 (Tenn. 1986); State v. Jones, No. 01C01-9212-CR-00384, 1993 WL 345544, at *1 (Tenn. Crim. App. at Nashville, September 9, 1993).  "The abuse of discretion standard is intended to constrain appellate review and implies 'less intense appellate review and, therefore, less likelihood of reversal.'" State v. Looper, No. M1999-00662-COA-R3-CV, 2000 WL 354404, at *3 (Tenn. App. at Nashville, April 7, 2000)(citation omitted).  Nevertheless, our supreme court has observed that an appellate court should find an abuse of discretion when a trial court has applied an incorrect legal standard or reached a decision that is against logic or reasoning and has caused an injustice to the complaining party. State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999); State v. Shuck, 953 S.W.2d 662, 669 (Tenn. 1997); Looper, No. M1999-00662-COA-R3-CV, 2000 WL 354404, at *3.  Similarly, this court has observed that "[a]n abuse of discretion standard contemplates us giving the trial court the benefit of its decision as long as that decision is supported by material evidence and is not arbitrary, capricious or illegal."  State v. Bordis, No. 01C01-9211-CR-00358, 1994 WL 672595, at *18 (Tenn. Crim. App. at Nashville, December 1, 1994).

> Tenn. R. Crim. P. 48(b) provides in relevant part that,
> [i]f there is unnecessary delay in presenting the charge to a grand jury against a defendant who has been held to answer to the trial court, or if there is unnecessary delay in bringing a defendant to trial, the court may dismiss the indictment . . . .

A dismissal pursuant to this rule can be with or without prejudice.  Benn, 713 S.W.2d at 310.  On the one hand, when a trial court's application of this rule rests upon due process concerns occasioned by a delay between the commission of an offense and the initiation of prosecution, U.S. CONST. amend. V and XIV, TENN. CONST. art. I, § 9, or the constitutional right to a speedy trial following the initiation of prosecution, U.S. CONST. amend. VI and XIV, TENN. CONST. art. I, § 9, Tenn. Code Ann. § 40-14-101 (1997), the dismissal bars a subsequent re-indictment and prosecution.  On the other hand, when the application of the rule rests upon a non-constitutional ground, a dismissal is normally without prejudice.  Benn, 713 S.W.2d at 310.

The constitutional standards applicable to pre-accusatorial and pre-trial delays have been clearly set forth in federal and Tennessee case law.  Generally, in order to establish a due process violation stemming from a pre-accusatorial delay, an accused must prove the following prerequisites: (1) there was a delay; (2) the accused sustained actual prejudice as a direct and proximate result of the delay; and (3) the State caused the delay in order to gain a tactical advantage over the accused or to harass the accused.  State v. Utley, 956 S.W.2d 489, 495 (Tenn. 1997)(citing United States v. Marion, 404 U.S. 307, 324-325, 92 S. Ct. 455, 465 (1971), and State v. Gray, 917 S.W.2d 668, 671 (Tenn. 1996)); see also State v. Carico, 968 S.W.2d 280, 284-285 (Tenn. 1998).  In contrast, when determining whether a defendant was denied his right to a speedy trial, the trial court must balance the following four factors: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant asserted a claim to this right; and (4) whether the defendant was prejudiced by the delay.  Utley, 956 S.W.2d at 492 (citing Barker v. Wingo, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972)); see also  State v. Vickers, 985 S.W.2d 1, 5 (Tenn. Crim. App. 1997).

As to unnecessary delay that falls short of constitutional proportions, our supreme court in Benn articulated the analysis required before a trial court may dismiss an indictment under Tenn. R. Crim. P. 48(b):

> The facts to be considered in passing on a motion to dismiss under Rule 48(b) where there has been no constitutional violation are the length of the delay, the reasons for the delay, the prejudice to the defendant, and waiver by the defendant. Of course, these are the same factors that determine a speedy trial constitutional violation, except for the factor of a defendant's assertion of his right to a speedy trial.

713 S.W.2d at 311. Again, the supreme court affirmed that, in the absence of a constitutional violation, dismissal with prejudice "should be utilized with caution and only after a forewarning to prosecutors." Id. at 310. Moreover, if a trial court finds it appropriate to dismiss an indictment with prejudice on the basis of a non-constitutional ground, the court "must make express findings of fact on each of the [above] factors." Id. at 311.

In dismissing the indictment in this case, the trial court did not address whether any pre-accusatorial or pre-trial delay had violated the appellee's constitutional rights, nor did the trial court make findings concerning the factors set forth in Benn. Moreover, we note that, as it currently stands, the record does not support the trial court's dismissal of the indictment under Tenn. R. Crim. P. 48(b), whether on constitutional or non-constitutional grounds. The appellee was indicted approximately three years and two months following the first inquiries by the Tennessee Department of Transportation into the appellee's activities. Her trial was scheduled approximately three years and four months thereafter. The trial court itself noted the complexity of the case, but the prosecutor also tacitly conceded some negligence on the part of the State in prosecuting this case. Nevertheless, the record is devoid of evidence that the State intentionally caused the delays in order to gain a tactical advantage over the appellee or to harass the appellee. The record is also devoid of any assertion by the appellee of her right to a speedy trial or any request that her case be scheduled for trial. Indeed, the record reflects that the appellee was released on bond and living in Texas following her indictment and pending her trial and, at one point, notified the court that she was unable to travel to Tennessee for six months due to poor health. Finally, the record contains no evidence that the delays prejudiced the appellee's ability to prepare and present a defense, and the appellee has never asserted any prejudice. Accordingly, we must conclude that the trial court abused its discretion in dismissing the indictment pursuant to Tenn. R. Crim. P. 48(b).

**b.      Tenn. R. Crim. P. 7(b)**

The State additionally challenges the trial court's denial of its motion to amend the indictment in this case pursuant to Tenn. R. Crim. P. 7(b), which denial precipitated the State's request for the entry of an order of nolle prosequi as to all counts of the indictment. The denial of a motion to amend an indictment, like the dismissal of an indictment pursuant to Tenn. R. Crim. P. 48(b), is a matter within the trial court's discretion, and this court will reverse the trial court's decision only if that discretion has been abused. State v. Kennedy, 10 S.W.3d 280, 283 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1999).

The legal standard applicable to the amendment of an indictment is set forth in Tenn. R. Crim. P. 7(b), which provides that

> [a]n indictment . . . may be amended in all cases with the consent of the defendant. If no additional or different offense is thereby charged and no substantial rights of the defendant are thereby prejudiced, the court may permit an amendment without the defendant's consent before jeopardy attaches.

This rule is designed to protect several constitutional rights, including the right to an indictment by a grand jury, TENN. CONST. art. I, § 14, and the right to fair notice of the nature and cause of the accusation, U.S. CONST. amend. VI and XIV, TENN. CONST. art. I, § 9.

In this case, the appellee did not consent to the proposed amendments to the indictment. However, it is undisputed that jeopardy had not yet attached in the appellee's case. Thus, the trial court could grant the State's motion if the proposed amendments did not charge additional or different offenses or otherwise prejudice substantial rights of the appellee.

In considering whether the proposed amendments charged additional or different offenses than those presented to the Unicoi County Grand Jury, we note that the allegations in the original indictment and the proposed amended indictment both concern the appellee's theft of funds entrusted to her by the Tennessee Department of Transportation for the purchase of three specific tracts of land and the appellee's theft of all interest earned on state funds deposited in an escrow account at Erwin National Bank. Although the amendments increase or change the time frame in which the offenses occurred, this court has previously held that an amendment to an indictment changing the date of the commission of the offense does not charge a defendant with a new or additional crime. Kennedy, 10 S.W.3d at 284 (citing, in part, State v. Wells, No. 01C01-9505-CR-00146, 1997 WL 311924, at **5-6 (Tenn. Crim. App. at Nashville, June 6, 1997), in which this court held that amendments to charges of sexual battery that changed "in 1990" and "in 1991" to "on a day before April 22, 1991" did not allege new or different offenses despite the defendant's argument that the increased time frame forced him to defend against charges that were not in the original indictment). Moreover, because an indictment for an offense encompasses, by implication, all lesser included offenses, Strader v. State, 362 S.W.2d 224, 228 (Tenn. 1962), State v. Morgan, No. 03C01-9902-CR-00072, 2000 WL 45723, at *2 (Tenn. Crim. App. at Knoxville, January 21, 2000), perm. to appeal denied, (Tenn. 2000), Tenn. R. Crim. P. 31(c), the State's proposed amendment to the value of the money alleged stolen in Count Four did not charge an additional or different offense. Accordingly, the sole remaining question is whether the proposed amendments otherwise prejudiced a substantial right of the appellee.

As noted previously, under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Tennessee Constitution, an accused is entitled to notice of the nature and cause of the accusation. State v. Hill, 954 S.W.2d 725, 727 (Tenn. 1997). In order to satisfy this constitutional mandate, an indictment must provide a defendant with notice of the offense charged, provide the court with an adequate ground upon which a proper judgment may be entered, and provide the defendant with protection against double jeopardy. State v.

Lemacks, 996 S.W.2d 166, 172 (Tenn. 1999); Hill, 954 S.W.2d at 727; State v. Byrd, 820 S.W.2d 739, 740-741 (Tenn. 1991). Tenn. Code Ann. § 40-13-202 (1997) similarly requires that

> [t]he indictment . . . state the facts constituting the offense in ordinary and concise language, without prolixity or repetition, in such a manner as to enable a person of common understanding to know what is intended, and with that degree of certainty which will enable the court on conviction, to pronounce the proper judgment . . . .

A formally amended indictment will generally provide an adequate ground upon which a proper judgment may be entered and protection against double jeopardy but, if the amendment is proffered shortly before trial, may fail to afford meaningful notice of the charged offense.

That having been said, the above constitutional and statutory mandates generally do not require that the time of the commission of the offense be stated in the indictment. "The rule of law is well-established in Tennessee that the exact date, or even the year, of an offense need not be stated in an indictment . . . unless the date or time is 'a material ingredient in the offense.'" Byrd, 820 S.W.2d at 740; see also Tenn. Code Ann. § 40-13-207 (1997). Therefore, the date of an offense may generally be amended under Tenn. R. Crim. P. 7(b). Kennedy, 10 S.W.3d at 283. In a closely related context, Tennessee courts have also observed that a variance between the time of the commission of the offense alleged in the indictment and the time established by proof at trial is rarely fatal. State v. Ealey, 959 S.W.2d 605, 608 (Tenn. Crim. App. 1997)("[T]he State is not required to strictly show that the offenses occurred on or during the dates alleged in the [indictment] unless the dates are essential to proving the offense or imposing a defense."); State v. West, 737 S.W.2d 790, 792-793 (Tenn. Crim. App. 1987)(holding that, unless the time of the commission of the offense is an essential element of the offense or time will bar the commencement of the prosecution, "the time of the commission of the offense averred in the indictment is not material and proof is not confined to the time charged"); State v. Fears, 659 S.W.2d 370, 374 (Tenn. Crim. App. 1983)(enunciating the same principle); State v. Edmonds, No. 02C01-9708-CC-00334, 1998 WL 527232, at *4 (Tenn. Crim. App. at Jackson, August 25, 1998)("[T]he state has no burden to prove that an offense happened on the exact date alleged in the indictment."); State v. Watson, No. 01C01-9606-CC-00260, 1998 WL 10881, at **4-5 (Tenn. Crim. App. at Nashville, January 14, 1998)("Variances between the indictment and the proof as to when the offense occurred are particularly innocuous."). Additionally, an eleventh hour amendment that merely charges a lesser included offense will not implicate constitutionally guaranteed notice requirements. Cf. State v. Burns, 6 S.W.3d 453, 465-467 (Tenn. 1999).

In the final analysis, the extent to which a proposed amendment to an indictment or a variance affects "substantial rights" of a defendant depends in large part upon the extent to which the amendment or variance affects the defendant's ability to prepare for trial and present a defense. State v. Mayes, 854 S.W.2d 638, 640 (Tenn. 1993)(citing Berger v. United States, 295 U.S. 78, 82, 55 S. Ct. 629, 629 (1935)); State v. Badgett, 693 S.W.2d 917, 919 (Tenn. Crim. App. 1985).

> General agreement exists that the concept of "prejudice" to the "substantial rights" of the accused requires an inquiry that focuses on the element of surprise. . . . [Therefore,] the defense, in opposing an

amendment [to an indictment], must make some showing that the proposed change introduces an element of surprise that will interfere with the defense's ability to defend against the charges.

WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 19.5(B) (West Group ed., 2d ed. 1999)(footnotes omitted). In this case, the record is devoid of any evidence of surprise or confusion concerning the factual basis of the indictment. Rather, it is apparent from defense counsel's statements at the March 2 hearing and the exhibits introduced by defense counsel at the hearing that she was aware at all times that the dates alleged in the indictment were incorrect and, furthermore, that she was fully apprised of the relevant time periods and the relevant amounts of stolen funds by, at the latest, November of 1998. Indeed, as noted previously, defense counsel stated that the prosecutor had reviewed the appellee's case with her. Significantly, she did not allege that the prosecutor misled her concerning the factual basis of the indictment, including the relevant time periods of the offenses. In the absence of any evidence of surprise, we must conclude that the proposed amendments did not affect substantial rights of the appellee, and the trial court abused its discretion in denying the State's motion to amend the indictment.

**c.     Jurisdiction**

Although not raised by either party on appeal, we nevertheless address an issue that troubled the trial court. Tenn. R. App. P. 13(b). At the March 2 hearing, the trial court expressed its doubt that Unicoi County was the appropriate venue in this case. Specifically, the court noted that the thefts in this case related to the writing of checks by the appellee in Alabama or Texas requesting the disbursement of funds held in an escrow account in Unicoi County. The funds were apparently disbursed to individuals or entities outside Tennessee. Accordingly, the trial court asserted, "I have a problem that we're in essence prosecuting an escrow account."

Tenn. Code Ann. § 39-11-103(a) (1997) provides that [e]very person, whether an inhabitant of this or any other state or country, is liable to punishment by the laws of this state, for an offense committed in this state, except where it is by law cognizable exclusively in the courts of the United States.

Moreover, when an accused is liable to punishment by the laws of this state under Tenn. Code Ann. 39-11-103(a), she is entitled to a trial in the county in which the offense was committed. TENN. CONST. art. I, § 9; Tenn. R. Crim. P. 18(a); see also Ellis v. Carlton, 986 S.W.2d 600, 601 (Tenn. Crim. App.), perm. to appeal denied, (Tenn. 1998). In other words, "the jurisdiction of the trial court is limited to the crimes which occur within the territorial boundaries of the county in which it sits." Ellis, 986 S.W.2d at 601.

We initially emphasize that, according to the record currently before this court, if the instant offenses occurred in Tennessee at all, they occurred in Unicoi County. Thus, the question is not whether Unicoi County is the appropriate venue but, more broadly, whether Tennessee possesses territorial jurisdiction. In this regard, section (b) of Tenn. Code Ann. § 39-11-103 provides a clear answer. According to that statutory section,

-10-

(1) When an offense is commenced outside this state and consummated in this state, the person committing the offense is liable for the punishment in this state in the county in which the offense was consummated, unless otherwise provided by statute.

(2) It is no defense that the person charged with the offense was outside this state when the offense was consummated if the person used:

      (A) An innocent or guilty agent; or

      (B) Other means proceeding directly from the person.

Id. In this case, as noted by the trial court, the appellee allegedly commenced her offenses by writing checks in Alabama or Texas drawing upon state funds held in the escrow account at Erwin National Bank. The record before this court further indicates that the appellee's offenses, if proven by the State at trial, were indeed consummated in Unicoi County.

In State v. Legg, 9 S.W.3d 111, 115 (Tenn. 1999), the supreme court agreed that in most cases a crime is consummated when the last element necessary for the commission of the crime is satisfied. In order to establish the theft offenses charged in the indictment, the State would be required to prove beyond a reasonable doubt that (1) the appellee knowingly exercised control over the state funds; (2) the appellee exercised control over the funds with the intent to deprive the State of the funds; and (3) the appellee did not have the State's effective consent. Tenn. Code Ann. § 39-14-103. Thus, the appellee's exercise of control over the state funds was a prerequisite to consummation of the offenses. Unlike the trial court, we do not believe that the mere act of writing checks or the distribution of those checks to vendors or other beneficiaries constituted the exercise of control over the state funds. Rather, we conclude that the appellee exercised control over the funds when the bank in Unicoi County received a check written by the appellee and requesting the disbursement of funds from the escrow account, *and* the bank honored the check by disbursing state funds.[2] See, e.g., Clark v. State, 287 A.2d 660, 667 (Del. 1972)(holding that, when a defendant committed the offense of embezzlement by writing checks on an "attorney's" account, venue was proper in the county where the bank account was located because the embezzlement culminated "when the check[s] clear[ed] through the account in the bank"); State v. Frank, 355 So. 2d 912, 916-917 (La. 1978)(holding that, for the purpose of establishing the appropriate venue for the prosecution of a theft offense, "conversion" occurred when a New Orleans bank's cashier's check, following a forged endorsement and deposit in a Baton Rouge bank, was presented at the New Orleans bank for payment and was honored); State v. Riley, 151 S.E.2d 308, 322-323 (W. Va. 1966)(holding that, when a defendant embezzled Board of Education funds by writing checks on a bank account, "venue . . . [was found] in the county where the drawee bank . . . [was] located and the check . . . [was] deposited for payment, and until the check . . . [was] paid there . . . [was] no conversion or embezzlement"). Contingent upon the State's offer of proof at trial and the jury's findings, the

---

[2] Because we conclude that the offenses were not consummated in either Alabama or Texas, we need not decide whether theft is a continuing offense. See Legg, 9 S.W.3d at 115-118 (holding that, although the kidnapping offense was both commenced and consummated in Alabama, kidnapping is a continuing offense and, therefore, "the State needed only to show that at least one element of the crime continued into Tennessee for territorial jurisdiction to properly attach").

-11-

remaining elements were simultaneously satisfied when the checks related to the appellee's personal expenses or her company's expenses and the disbursements were not authorized by the Tennessee Department of Transportation.

As noted above, the appellee's absence from Tennessee at the time the offenses were consummated provides no defense to the court's exercise of jurisdiction. Tenn. Code Ann. § 39-11-103(b)(2) embodies the principle, also recognized in other states, that

> if a person, while in one state sets in motion a force which operated in another state, the actual presence of the offender in the other state is not necessary to make . . . [her] amenable to its laws for the crime committed there, if an offense is the immediate result of . . . [her] action.

State v. Butler, 724 A.2d 657, 663 (Md. App. 1999); see also, e.g., In Re Vasquez, 705 N.E.2d 606, 610-611 (Mass. 1999); Keselica v. Commonwealth, 480 S.E.2d 756, 758 (Va. App. 1997).

### III. Conclusion

For the foregoing reasons, we reverse the order of the trial court dismissing the indictment and remand this case for further proceedings. Specifically, upon a request by the appellee, the trial court should conduct a hearing for the purpose of determining whether a dismissal of the indictment is appropriate under the standards enunciated in this opinion. If, at that hearing, no additional evidence is presented satisfying those standards, the trial court should permit the amendment of the indictment, and this case should proceed to trial.

_____
NORMA McGEE OGLE, JUDGE