IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | FOR PUBLICATION |
| | ) | |
| Appellant, | ) | FILED: _____ |
| | ) | |
| v. | ) | GILES CIRCUIT |
| | ) | |
| JIMMY LEGG, | ) | HON. ROBERT L. JONES |
| | ) | JUDGE |
| Appellee. | ) | |
| | ) | No. M1998-00479-SC-R11-CD |

**FILED**

**December 20, 1999**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

For the Appellant:
Paul G. Summers
Attorney General & Reporter

Michael E. Moore
Solicitor General

Kim R. Helper
Assistant Attorney General
Nashville, Tennessee

For the Appellee:
Raymond W. Fraley, Jr.
Fayetteville, Tennessee

Johnny D. Hill, Jr.
Fayetteville, Tennessee

**OPINION**

COURT OF CRIMINAL APPEALS
REVERSED AND REMANDED

BARKER, J.

We granted the appeal in this case to address whether the State of Tennessee has territorial jurisdiction pursuant to Tennessee Code Annotated section 39-11-103(b)(1) to prosecute a charge of aggravated kidnapping that was commenced in Alabama. For the reasons stated herein, we hold that section 39-11-103(b)(1) permits the exercise of territorial jurisdiction over a continuing offense where any essential element of the offense is continued and committed in Tennessee. We also hold that the General Assembly intended that the offense of aggravated kidnapping to sanction a continuing course of conduct, and that at least one element of that crime was proven to have occurred in Tennessee. Finally, we hold that the appellee was not entitled to a jury instruction on assault or aggravated assault because the evidence was legally insufficient to support a conviction in Tennessee. Therefore, this case is remanded to the Giles County Circuit Court for reinstatement of the appellee's conviction and sentence for aggravated kidnapping.

## BACKGROUND

The appellee, Jimmy Legg, married Martha Legg for a second time in July of 1990. Three years later in October of 1993, the couple separated, and Ms. Legg went to live in nearby Athens, Alabama. About a week after the separation, the appellee traveled from his home in Giles County, Tennessee to see his wife in Alabama. When the appellee found his wife, he told her that his sister had been in an automobile accident and that he needed to talk to someone. Although Ms. Legg testified that she was concerned that the appellee might be violent, she agreed to get into the truck with him after he assured her that nothing was going to happen. Ms. Legg also insisted that their daughter get into the appellee's truck with her.

After the appellee drove a short distance, he stopped and asked his daughter to get out of the truck to deliver a message to her brother. As the daughter stepped out of the truck, Ms. Legg also tried to get out of the truck. However, the appellee pulled Ms. Legg back into the truck, locked the doors, and sped away. While driving in Alabama, the appellee repeatedly questioned Ms. Legg about why she left him and with whom she had been. Every time Ms. Legg tried to answer the appellee's questions, he would hit her in the face around the eyes. Ms. Legg also testified that the appellee hit her with a pistol and that on several occasions, he held the pistol to her head while threatening to shoot her.

The appellee finally stopped later that afternoon at the Sands Motel in Giles County, Tennessee and rented a room for the night. Shortly thereafter, two police officers came to the defendant's room after being dispatched on a "welfare check." One of the officers talked to the appellee while the other officer went inside the room to talk to Ms. Legg, who had shut herself in the bathroom. When the officer questioned Ms. Legg about her injuries, she replied that she and the appellee were involved in an automobile accident. Although the officer offered to take her to the hospital, Ms. Legg refused to go, and she requested several times for the officers to leave. Ms. Legg later testified that she was afraid to leave the motel room because her husband told her that he would shoot her.

The next morning, the appellee left the hotel room to pay lodging for another night. Ms. Legg testified that as he left, the appellee stated that he was "going to finish what he started" when he returned. Believing this statement to mean that the appellee would return to "beat [her] some more," Ms. Legg ran out of the motel room and asked a nearby guest of the motel for help. The guest called the police and an ambulance, and Ms. Legg was taken to a local hospital.

3

On July 11, 1994, the Giles County grand jury returned an indictment charging the appellee with one count of especially aggravated kidnapping. During a two-day jury trial, the State introduced evidence showing that Ms. Legg sustained severe physical injuries, but the State could not establish that any of her physical injuries actually occurred in Tennessee. The jury returned a guilty verdict on the offense of aggravated kidnapping, and the appellee was sentenced by the circuit court to serve eight years in the Department of Correction.

On appeal, the appellee argued among other things that the State failed to establish proper venue in Giles County because the State introduced no proof that physical injury occurred in Tennessee. Framing the issue as one of territorial jurisdiction, the Court of Criminal Appeals held that the State of Tennessee lacked jurisdiction because the offense was both commenced and consummated in Alabama as contemplated by Tennessee Code Annotated section 39-11-103(b)(1). The court reduced the appellee's conviction to false imprisonment and modified his sentence to eleven months and twenty-nine days. The State of Tennessee then sought review in this Court arguing that the Court of Criminal Appeals erred in holding that the offense of aggravated kidnapping was consummated in Alabama.

Although the Court of Criminal Appeals may have been correct in stating that the offense was technically consummated in Alabama, we disagree with the conclusion of the intermediate court that the State lacked jurisdiction in this case. Rather, we conclude that the General Assembly fully intended for the courts of this state to exercise territorial jurisdiction pursuant to section 39-11-103(b)(1) over continuing offenses carried into Tennessee.

## TERRITORIAL JURISDICTION

It is elementary that before a court may exercise judicial power to hear and determine a criminal prosecution, that court must possess three types of jurisdiction: jurisdiction over the defendant, jurisdiction over the alleged crime, and territorial jurisdiction. The basic requirement that a court possess territorial jurisdiction, which recognizes the power of a state to punish criminal conduct occurring within its borders, is embodied in the constitutional right to a trial "by an impartial jury of the county in which the crime shall have been committed." See Tenn. Const. art. I, § 9; see also U.S. Const. amend. VI. As such, the concept of territorial jurisdiction reflects that "[a] state's criminal law is of no force and effect beyond its territorial limits . . . ." See Coffee v. Peterbilt of Nashville, Inc., 795 S.W.2d 656, 658-59 (Tenn. 1990).

At common law in Tennessee, the courts required that the *locus in quo* of the crime occur within Tennessee before territorial jurisdiction could attach. One example of this requirement may be seen in State v. Evans, 1 Tenn. (1 Over.) 211 (1806), in which a defendant was convicted for theft in a settlement where the state boundary between Tennessee and Kentucky was not precisely marked. In affirming the conviction, the Supreme Court stated that general opinion confirmed that "the *locus in quo* was within this State . . . ." Id. at 220. Nevertheless, if the crime actually occurred "without the limits of this State[, the Court] clearly should not have jurisdiction." Id. Thirty-eight years later, the Supreme Court reaffirmed the notion of territorial jurisdiction by stating that where the conduct occurred completely outside the state, Tennessee could exercise no jurisdiction over the offense. See Simpson v. State, 23 Tenn. (4 Hum.) 455, 465 (1844) (stating that if the proof showed "that the larceny was committed beyond the limits of this State, . . . [then the defendant was] guilty of no violation of the criminal code"); cf. Restatement of Conflicts § 425 (1934) (stating that

5

there can be no territorial jurisdiction where the conduct and its results both occur outside a state's territory).

Tennessee modified this common law rule by statute in 1858 and conferred jurisdiction on the courts to adjudicate crimes "commenced without this State [and] consummated within its boundaries . . . ." See Tenn. Code § 4973 (1858). This statute was retained by the General Assembly in its original wording until the last major revision of the criminal code in 1989.[1] As part of the 1989 criminal code revision, the legislature reworded the statute to read, "When an offense is commenced outside this state and consummated in this state, the person committing the offense is liable for punishment in this state in the county in which the offense was consummated, unless otherwise provided by statute." Tenn. Code Ann. § 39-11-103(b)(1) (1997).

Although the parties in this case do not dispute that the offense of aggravated kidnapping was "commenced" in Alabama, territorial jurisdiction nevertheless requires that the offense be "consummated" in Tennessee. Therefore, resolution of whether the circuit court properly possessed territorial jurisdiction depends upon the point at which the General Assembly contemplated that crimes are "consummated." See State v. Sliger, 846 S.W.2d 262, 263 (Tenn. 1993) (stating that the primary purpose of this Court in statutory interpretation "is to ascertain and carry out the legislative intent without unduly restricting or expanding the statute's coverage beyond its intended

---

[1] Cf. Tenn. Code Ann. § 40-1-102 (Supp. 1983); Tenn. Code Ann. § 40-102 (1952); Tenn. Code § 11473 (Williams 1934); Tenn. Code § 6934 (Shannon 1896); Tenn. Code § 5801 (Milliken & Vertrees 1884); Tenn. Code § 4973 (Thompson & Steger 1871); Tenn. Code § 4973 (1858).

Our research further indicates that the General Assembly borrowed this statute from a virtually identical statute found in the Alabama Code of 1852, which stated as follows:

When the commission of an offense commenced without this state, is consummated within its boundaries, the person committing the offense is liable to punishment therefor in this state, although he was out of the state at the commission of the offense charged, if he consummated it in this state, through the intervention of an innocent or guilty agent, or by any other means proceeding directly from himself; and in such case, the jurisdiction is in the county in which the offense was consummated, unless otherwise provided by law.

See Ala. Code § 3362 (1852).

scope"). In ascertaining the intent of the legislature in this regard, we should look to "the general purpose to be accomplished [by the statute]," Tidwell v. Collins, 522 S.W.2d 674, 676 (Tenn. 1975), and to "the natural and ordinary meaning of the statutory language," State v. Butler, 980 S.W.2d 359, 362 (Tenn. 1998).

We have not previously addressed when an offense is considered to be consummated within the meaning of section 39-11-103(b)(1). The intermediate court held that a crime is consummated essentially when the last element necessary for commission of the crime is satisfied. Although we agree that in most cases a crime is completed when all the elements are met, this general rule does not invariably follow in cases of continuing offenses:

> [A]s a general rule, a crime committed partly in one jurisdiction and partly in another is punishable only in the courts of the jurisdiction in which it was consummated. However, a continuing crime, although complete in the jurisdiction where first committed, *may continue to be committed, and may also be punished, in another jurisdiction.*

22 C.J.S. Criminal Law § 161(b) (1989) (emphasis added) (citations omitted).

The natural and ordinary meaning of the term "consummate" is "to finish by completing what was intended; bring or carry to upmost point or degree; carry or bring to completion." See Black's Law Dictionary 317 (6th ed. 1990). Based upon this meaning, we do not believe that the General Assembly intended to deny our courts jurisdiction over continuing offenses that are carried into this state. Along with Missouri, Tennessee shares the distinction of bordering more states than any other state in the union,[2] and forty-two of Tennessee's ninety-five counties share a common border with another state. Given the growing transient nature of our society, it becomes increasingly probable that many offenses commenced in a foreign state will

---

[2] Both Tennessee and Missouri share a common border with eight other states.

7

be continued into Tennessee. These facts alone make continuing offenses that are commenced in other states of special consequence to the administration of criminal justice in Tennessee, and this state has a unique interest in ensuring the ability to prosecute and punish continuing offenses that are carried across its borders.

The appellee argues that because courts are bound to strictly construe criminal statutes in favor of the defendant, the Court of Criminal Appeals was correct in stating that section 39-11-103(b)(1) forbids jurisdiction in the case of continuing offenses. We disagree. Although the common law required courts to give statutes a strict construction, the provisions of the criminal code now are to "be construed according to the fair import of their terms, including reference to judicial decisions and common law interpretations, to promote justice, and effect the objectives of the criminal code." Tenn. Code Ann. § 39-11-104 (1997). The interpretation of section 39-11-103(b)(1) urged by the appellee would allow a defendant guilty of a continuing offense under Tennessee law to go unprosecuted merely because the elements of that offense, although continuing in nature and present in Tennessee, were first satisfied in another state. We do not believe that the language of the statute compels such an interpretation or that the General Assembly intended for the statute to work such an absurd result.

We hold that when an offense is continuing in nature and has continued into Tennessee from another state, the offense is deemed to have both commenced and consummated anew in Tennessee so long as any essential element to the offense continues to be present in Tennessee. As such, Tennessee Code Annotated section 39-11-103(b)(1) does not defeat territorial jurisdiction in the case of a continuing offense from a court that is otherwise properly vested with jurisdiction over the

defendant and the offense.[3]  Therefore, in order to determine whether the circuit court properly possessed territorial jurisdiction in this case, we need to consider two questions: whether the General Assembly intended for the offense of aggravated kidnapping to constitute a continuing offense, and if so, whether any essential element of that offense in this case has occurred in Tennessee.

## CONTINUING OFFENSES

An offense may be considered a continuing offense only when "the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that [the legislature] must assuredly have intended that it be treated as a continuing one." Toussie v. United States, 397 U.S. 112, 115 (1970). Therefore, in deciding whether the General Assembly intended for an offense to constitute a continuing offense, this Court will look to the statutory elements of the offense and determine whether the elements of the crime themselves contemplate a continuing course of conduct. Cf. State v. Hoxie, 963 S.W.2d 737, 743 (Tenn. 1998) (discussing requirements for finding continuing offenses so as to render the election of offenses requirement inapplicable).

A person commits the offense of aggravated kidnapping when that person (1) "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty," Tenn. Code Ann. § 39-13-302; and (2) the unlawful removal or confinement is committed:

_____

[3] The doctrine of continuing offenses states that every moment an offense is continued, the offense is committed anew.  Therefore, our holding that a continuing offense carried into Tennessee from another state is commenced and consummated anew in Tennessee does not logically extend to non-continuing offenses. Non-continuing offenses are consummated when the last element of the offense is satisfied. See Jones v. State, 409 S.W.2d 169, 171 (Tenn. 1966) (holding crime of receiving stolen property is consummated for venue purposes when all the elements are met). Where satisfaction of the last element of a non-continuing offense occurs outside of Tennessee, then this state is clearly without territorial jurisdiction to prosecute that offense when that offense was also commenced outside of Tennessee.

(1)     To facilitate the commission of any felony or flight thereafter;
(2)     To interfere with the performance of any governmental or political function;
(3)     With the intent to inflict serious bodily injury on or to terrorize the victim or another;
(4)     Where the victim suffers bodily injury;  or
(5)     While the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon.

See id. § 39-13-304(a).  As evidenced by both the elements and nature of aggravated kidnapping, it is clear to us that the General Assembly intended for this offense to sanction a continuing course of conduct.

As is the case with kidnapping offenses generally in Tennessee, aggravated kidnapping essentially consists of the offense of false imprisonment plus the existence of one additional element.   The offense of false imprisonment was clearly intended to punish a continuing course of conduct.  The very use of the terms "removes" or "confines" contemplates a continued state of being restrained.  Consequently, an act of removal or confinement does not end merely upon the initial restraint, and a defendant continues to commit the crime at every moment the victim's liberty is taken.

In fact, under the present statute, no period of removal or confinement is capable of being reasonably divided into multiple segments with various points of termination.  Cf. State v. Rhodes, 917 S.W.2d 708, 713 (Tenn. Crim. App. 1995) (finding the offense of driving under the influence to be a continuing offense in part because it would be "impossible under the present statute reasonably to divide into more than one segment any one period of continuous driving under a continuing state of intoxication").  So long as the removal or confinement of the victim lasts, the offense of false imprisonment continues.  Therefore, because the statute itself contemplates that the victim's removal or confinement is one continuous event, we conclude that the

General Assembly intended for the offense of aggravated kidnapping to punish a continuing course of conduct.[4]

Because aggravated kidnapping is a continuing offense, the State needed only to show that at least one element of the crime continued into Tennessee for territorial jurisdiction to properly attach. We find that the State has met this burden. Although the State concedes that there is no evidence that any bodily injury occurred in Tennessee, the evidence is more than sufficient to establish that Ms. Legg was unlawfully removed or confined within this state so as to interfere substantially with her liberty. While the appellee argues that Ms. Legg had a number of opportunities to escape and was therefore not confined, this Court will not reweigh or reevaluate the evidence presented where the evidence is sufficient for conviction beyond a reasonable doubt. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). The resolution of factual issues raised by the evidence is within the sole province of the jury, State v. Burns, 979 S.W.2d 276, 287 (Tenn. 1998), and as evidenced by the verdict, the jury was satisfied that Ms. Legg was confined by the appellee. Therefore,

---

[4] Our conclusion that aggravated kidnapping is a continuing crime is further reinforced by the fact that several other states with similar statutes have held or stated that kidnapping is a continuing crime. See, e.g., Crump v. State, 625 P.2d 857, 863 (Alaska 1981) (holding that kidnapping is a continuing offense under a statute that "encompasses the holding of the victim for an unlawful purpose as well as abduction"); State v. Jones, 916 P.2d 1119, 1123 (Ariz. Ct. App. 1995) (stating that "[b]ecause kidnapping involves interfering with the victim's liberty, it continues until that liberty is restored"); State v. Gomez, 622 A.2d 1014, 1016 (Conn. 1993) (holding under a statute requiring the abduction or restraint of the victim that "[b]ecause kidnapping involves interfering with the victim's liberty, it continues until that liberty is restored"); People v. Phillips, 541 N.E.2d 1298, 1307 (Ill. App. Ct. 1989) (stating that "[k]idnapping is a continuing offense"); Idle v. State, 587 N.E.2d 712, 716 (Ind. Ct. App. 1992) (stating that "[b]ecause kidnapping—like confinement—involves the element of unlawful detention, it is a continuing crime; that is, it is continuously committed so long as the unlawful detention lasts"); State v. Zimmer, 426 P.2d 267, 286 (Kan. 1967) (holding that "[k]idnaping, which involves the detention of another, is a continuing offense"); State v. Hutchinson, 661 P.2d 1315, 1322-23 (N.M. 1983) (stating that "[k]idnapping is defined as the 'unlawful taking, restraining or confining of a person, by force or deception'" and that "[k]idnapping which involves the detention of another, is a continuous offense"); State v. White, 492 S.E.2d 48, 51 (N.C. Ct. App. 1997) (stating that "[c]ommon sense dictates that the offense of kidnapping should encompass the entire period of a victim's confinement from the time of the initial act of restraint or confinement until the victim's free will is regained" under statute prohibiting the unlawful confinement, restraint or removal of the victim); State v. Tucker, 512 S.E.2d 99, 105 (S.C. 1999) (stating that "[k]idnaping is a continuing offense. The offense commences when one is wrongfully deprived of freedom and continues until freedom is restored."); Kemple v. State, 725 S.W.2d 483, 485 (Tex. Ct. App. 1987) (stating that "[k]idnapping is a 'continuing offense.' The abduction does not 'occur' at only one time, but rather is a continuous, ongoing event."); State v. Dove, 757 P.2d 990, 994 (Wash. Ct. App. 1988) (stating that because "kidnapping involves the element of unlawful detention, it is a continuing crime—it is continuously committed as long as the unlawful detention of the kidnapped person lasts").

11

we conclude that the State has met its burden in showing that at least one essential element of the continuing offense of aggravated kidnapping was continued into Tennessee.

## JURY INSTRUCTION ON ASSAULT AND AGGRAVATED ASSAULT

Finally, the appellee argues that the circuit court erred in failing to instruct the jury on the offenses of assault and aggravated assault as lesser-included offenses of especially aggravated kidnapping.[5] Irrespective of whether the crimes of assault and aggravated assault are lesser-included offenses of especially aggravated kidnapping, however, we conclude that the appellee was not entitled to such an instruction. Before a defendant is entitled to an instruction on a lesser included offense, the offense must actually be a lesser-included offense of the offense charged, and the proof in the record must be legally sufficient to support a conviction on the lesser-included offense. See State v. Burns, __ S.W.3d __ (Tenn. 1999). In this case, the appellee is not entitled to such an instruction because he has not shown that the proof is legally sufficient to support a conviction in Tennessee on the charges of assault or aggravated assault.

Unlike aggravated kidnapping, the elements of the crime of assault do not contemplate a continuing course of conduct. See Tenn. Code Ann. §§ 39-13-101 to - 102 (1997). Rather, the crime itself contemplates that it is consummated or completed the moment bodily injury occurs. Because there was no proof that any bodily injury occurred in Tennessee, the evidence was legally insufficient to support a conviction in this state for assault or aggravated assault based upon bodily injury. See

---

[5] Although the Court of Criminal Appeals declined to address this issue because it reduced the appellee's conviction to false imprisonment, we choose to address the issue ourselves in the interest of judicial economy.

generally <u>Burns</u>, __ S.W.3d __. Therefore, we hold that the appellee was not entitled to an instruction on assault or aggravated assault even if those offenses were lesser-included offenses of especially aggravated kidnapping.

## CONCLUSION

To summarize, we hold that Tennessee Code Annotated section 39-11-103(b)(1) permits the exercise of territorial jurisdiction over continuing offenses when at least one element of the offense is continued and therefore committed in Tennessee. We also hold that the General Assembly intended for the crime of aggravated kidnapping to punish a continuing course of conduct and that the State introduced evidence sufficient for the jury to conclude that at least one essential element of that offense was committed in Tennessee. Therefore, we reverse the judgment of the Court of Criminal Appeals holding that the State lacked territorial jurisdiction in this case. Finally, we hold that the appellee was not entitled to a jury instruction on assault or aggravated assault because the evidence was legally insufficient to support a conviction in Tennessee. This case is remanded to the Giles County Circuit Court for reinstatement of the appellee's conviction and sentence for aggravated kidnapping.

Costs of this appeal are assessed to the appellee, Jimmy Legg, for which execution shall issue if necessary.

_____
WILLIAM M. BARKER, JUSTICE

CONCUR:

ANDERSON, C.J.
DROWOTA, BIRCH, HOLDER, JJ.

13