IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 5, 2000

## STATE OF TENNESSEE v. ANTHONY PERRY

**Direct Appeal from the Criminal Court for Shelby County**
**No. 96-06386-88     Joseph B. Brown, Jr., Judge**

---

**No. W1999-01370-CCA-R3-CD  - Filed July 13, 2001**

---

The defendant appeals his convictions for first degree felony murder, especially aggravated kidnapping, and conspiracy to commit felony murder. After careful review, we conclude that the evidence is sufficient to support the defendant's convictions for first degree felony murder and especially aggravated kidnapping. Further, we hold that conspiracy to commit felony murder is not a recognizable offense in Tennessee. Therefore, we affirm the defendant's convictions for first degree felony murder and especially aggravated kidnapping. We reverse and dismiss the defendant's conviction for conspiracy to commit felony murder.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed in Part,**
**Reversed in Part**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOE G. RILEY and ROBERT W. WEDEMEYER, JJ., joined.

Coleman W. Garrett, Memphis, Tennessee, for the appellant, Anthony Perry.

Paul G. Summers, Attorney General and Reporter; Lucian D. Geise, Assistant Attorney General; William L. Gibbons, District Attorney General; and Paul F. Goodman and Paul Thomas Hoover, Jr., Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

In May 1996, the Shelby County Grand Jury returned three indictments against the defendant and other co-defendants. In total, the indictments contained seven counts. A jury found the defendant guilty of three counts: first degree murder, Tennessee Code Annotated section 39-13-202(a)(2); especially aggravated kidnapping, Tennessee Code Annotated section 39-13-305(a)(4); and conspiracy to commit felony murder, Tennessee Code Annotated sections 39-12-103 and 39-12-202(a)(2). The jury then imposed a life sentence for the first degree felony murder conviction. After a sentencing hearing, the trial court sentenced the defendant to the Department of Correction for twenty (20) years as a Range I Standard Offender for the especially aggravated kidnapping

conviction and fifteen (15) years as a Range I Standard Offender for the conspiracy to commit felony murder conviction. These sentences were ordered by the trial court to run concurrently with each other and the life sentence. After the defendant's motion for new trial was overruled, a timely notice of appeal was filed. The appeal is therefore properly before us, and the defendant claims: (1) The evidence was insufficient to support any of his convictions; and (2) The trial court incorrectly relied on the theory of criminal responsibility in denying the defendant's motion for judgment of acquittal at the close of the State's proof.

After review, we conclude that sufficient evidence exists to support the defendant's convictions for first degree felony murder and especially aggravated kidnapping. We further conclude that conspiracy to commit felony murder is not a recognizable offense in Tennessee.

## Facts

On August 12, 1995, Mr. Leslie Webber, Jr. (Leslie Jr.) awoke to what he described as "scuffling noises" and his mother, Dorothy Webber (victim) telling someone not to kill her husband, Leslie Webber, Sr. (Leslie Sr.). At that moment, a female came into Leslie Jr.'s room, pointed a revolver at him, and instructed him not to move. Two males then entered his room, placed a gun to his head, tied him up, and ransacked his room.

The individuals momentarily left the house but soon returned to take the keys to the victim's car, a 1993 blue Toyota Camry. One of the males said, "We got your mama," and ran out of the house. Leslie Jr. eventually freed himself and rushed to his parents' bedroom, where he found his father, Leslie Sr., dazed, with a knot on his head and his hands cuffed. After realizing the men had fled with his mother, Leslie Jr. called 911 and his brothers. The police arrived, along with other members of the victim's family. They began looking for the victim and for the victim's blue Toyota Camry.

Two days later, one of the victim's sons located the victim's car at an apartment complex near Airways Boulevard in Memphis. Eight days later, on August 22, 1995, the victim's body was discovered in a field in DeSoto County, Mississippi.[1] Duct tape had been placed around the victim's entire head, thereby covering her nose and mouth, and her hands were cuffed behind her back.

The evidence revealed that the victim had been taken to TK's Tire Shop on Airways and then to a room in the Elvis Presley Boulevard Inn prior to her death. Memphis Police Department Sergeant Richard Roleson interviewed the defendant and the defendant gave a statement after he waived his Miranda rights. At trial, Sergeant Roleson read from the defendant's statement, which the defendant had signed on October 27, 1995. According to the defendant's written statement and his testimony at trial, he denied kidnapping the victim. The defendant described being paged by his cousin, Ydale Banks, and after returning Banks' call, the defendant went to TK's Tire Shop, where

---

[1] The record does not reveal who discovered the victim's body nor how the victim's body was discovered.

he saw the victim in a U-Haul truck. Also present were Terrence Keller, and another person known as "T."

According to the defendant, he, along with Banks and "T," drove the victim to the Elvis Presley Boulevard Inn where the defendant and "T" sat with the victim for approximately ten (10) hours. The defendant stated that upon leaving the motel, he understood that he would be compensated for spending time with the bound victim. The defendant stated that he left the motel and returned home. Also according to the defendant's statement, he denied taping the victim's mouth and claimed that he only taped her ankles.

The defendant further stated that he went back to the tire store the next morning and was informed "that they were going to get rid of [the victim]," who was once again in the back of a U-Haul truck. The defendant, along with others in the group, then drove the victim in the U-Haul truck to a remote field in Mississippi. In the defendant's statement, contrary to his testimony at trial, he stated that the victim was still alive when they rolled her out of the U-Haul. The defendant further stated that at some time Keller and "T" taped the victim's upper extremities.

Dr. O. C. Smith, medical examiner, testified that he examined the victim's body on August 23, 1995, and identified her through her dental records. He testified that the victim had been dead approximately seven (7) to ten (10) days. Dr. Smith testified that the victim's hands were cuffed behind her head and duct tape covered her entire face. His examination revealed that suffocation was the cause of death. He further testified that the victim would have died approximately two (2) to four (4) minutes after being deprived of oxygen.

The defendant testified on his own behalf at trial and claimed that he had given some false information in his statement to the police. The defendant testified about the events surrounding the victim's death and gave additional information about what took place. He testified that when he arrived at TK's Tire Shop, he saw the victim with her hands bound behind her and duct tape across her eyes and mouth. He then drove the U-Haul to the Elvis Presley Inn, and the others in the group put the victim in a room. After sitting with the victim for approximately ten (10) hours, the defendant left the motel room and walked back to TK's Tire Shop, where he met Banks and they drove back to the motel. Upon returning to the motel, they placed the victim in the U-Haul truck and the defendant taped the victim's ankles. The next morning, "T" picked up the defendant and they went back to the tire shop, where the defendant learned that the victim was dead. The group discussed getting rid of the body and eventually loaded the victim's body into the U-Haul truck. The defendant drove the truck to a field in Mississippi where he helped roll her to the bottom of the truck ramp and left her. When asked why he told police the victim was alive when they put her out in Mississippi, the defendant claimed that Banks told him to say that so Banks could not be prosecuted in Tennessee.

**Analysis**

A. <u>Motion for Judgment of Acquittal</u>

First, we address the defendant's claim that the trial court erred in denying his motion for judgment of acquittal at the close of the State's proof. Specifically, the defendant complains that the trial court erred by applying the theory of criminal responsibility in overruling his motion. However, a motion for judgment of acquittal made at the end of the State's proof "is waived when the defendant elects to present evidence on his own behalf." <u>State v. Ball</u>, 973 S.W.2d 288, 292 (Tenn Crim. App. 1998); <u>see also</u>, <u>State v. Mathis</u>, 590 S.W.2d 449, 453 (Tenn. 1979). Once a defendant makes a motion for judgment of acquittal, the defendant must stand on that motion and not present any other proof in order to contest the denial of that motion. <u>See</u> <u>Ball</u>, 973 S.W.2d at 292. This court does not return to the midpoint of the trial and review the record as it existed when the motion was made. <u>See</u> <u>id.</u>; <u>see also</u> <u>State v. Thompson</u>, 549 S.W.2d 943, 945 (Tenn. 1977). Therefore, we will review all evidence presented at trial in determining whether sufficient evidence existed for application of the theory of criminal responsibility.

Whether sufficiency of the evidence for acquittal purposes is being considered by the trial court upon a motion for judgment of acquittal or by an appellate court upon review, the standard to apply is the same. <u>State v. Adams</u>, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995). That standard is "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979).

The theory of criminal responsibility is found in Tennessee Code Annotated section 39-11-402, which provides:

> A person is criminally responsible for an offense committed by the conduct of another if: . . . [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense.

The defendant contends that he never possessed the requisite mental state to kidnap the victim or to kill the victim, and thus he could not be held criminally responsible for the conduct of another. He also contends that because he was not present when the victim was killed, he cannot be held criminally responsible for her killing. However, to be held criminally responsible for the conduct of another, the State needed only to show that the defendant intended to promote or assist the commission of the offense, not the intent to commit the offense. <u>See</u> Tenn. Code Ann. § 39-11-402(2).

In the State's case in chief, not only did they introduce substantial evidence showing the defendant's involvement in the commission of the continuing kidnapping,[2] but they also presented substantial proof that the defendant intended to promote or assist the commission of the kidnapping. The State introduced the defendant's own signed statement, in which he stated that he drove the victim to a motel; sat with the victim for approximately ten (10) hours in the motel; and, at some point during the course of the crime, taped the victim's ankles. The defendant's testimony at trial, although different in some aspects from his signed statement, corroborated the fact that he taped the victim's ankles and placed her in the back of a U-Haul truck. Although the evidence was not clear as to who actually killed the victim, the evidence clearly showed an intent by the defendant to promote or assist the commission of the kidnapping. Therefore, sufficient evidence existed for application of the theory of criminal responsibility. This issue is without merit.

B. Sufficiency of Evidence

The defendant asserts that the evidence was insufficient to support his convictions for first degree felony murder, especially aggravated kidnapping, and conspiracy to commit felony murder. The proper inquiry for an appellate court determining the sufficiency of evidence to support a conviction is whether, considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value given to the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this court does not reweigh or reevaluate the evidence. See Bland, 958 S.W.2d at 659. Nor may this court substitute its inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Liakas v. State, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956).

The standard for appellate review is the same whether the conviction is based upon direct or circumstantial evidence. See State v. Vann, 976 S.W.2d 93, 111 (Tenn. 1998). "A conviction may be based entirely on circumstantial evidence where the facts are 'so clearly interwoven and connected that the finger of guilt is pointed unerringly at the Defendant and the Defendant alone.'" State v. Smith, 868 S.W.2d 561, 569 (Tenn. 1993) (quoting State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985)). A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the verdict rendered by the jury. Id.; see also State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Furthermore, the State on appeal is entitled to the strongest legitimate view

---

[2] The defendant asserted that he is not guilty of kidnapping because he did not participate in the initial taking. However, in State v. Legg, 9 S.W.3d 111, 118 (Tenn. 1999), our Supreme Court held that kidnapping offenses are continuing offenses. Therefore, it is not essential for a conviction of kidnapping that the defendant take part in the initial removal or confinement.

of the evidence and all reasonable and legitimate inferences which may be drawn from the evidence. See Hall, 8 S.W.3d at 599; Bland, 958 S.W.2d at 659.

1. Felony Murder Conviction

Under Tennessee law, felony murder is "[a] killing of another committed in the perpetration of or attempt to perpetrate any . . . kidnapping." Tenn. Code Ann. § 39-13-202(a)(2). The indictment in this case alleged that the defendant committed felony murder in the perpetration of a kidnapping, not especially aggravated kidnapping. Therefore, the jury was only required to find that the defendant committed a false imprisonment that exposed the victim to a substantial risk of bodily injury or that he was criminally responsible for such conduct of another. In addition, the jury had to find that a death occurred in the perpetration of that kidnapping. The jury was not required to find that the defendant killed the victim. The jury only had to find that the defendant committed the underlying kidnapping, or that he was criminally responsible for such kidnapping, and a death occurred in the perpetration of that kidnapping.

Here the evidence was sufficient for the jury to find the defendant guilty of kidnapping, as is discussed later in this opinion. Furthermore, the evidence clearly showed that, during the course of this kidnapping, the victim was taped around her entire head and suffocated to death. The medical testimony indicated that the victim died in two to four minutes after being deprived of oxygen. Based upon this evidence, any rational trier of fact could conclude beyond a reasonable doubt that the victim died in the perpetration of this kidnapping. Therefore, we conclude that sufficient evidence exists to find the defendant criminally responsible for felony murder.

2. Especially Aggravated Kidnapping

Next, we address whether sufficient evidence exists to support the defendant's conviction for especially aggravated kidnapping. Under Tennessee law, especially aggravated kidnapping is defined as

> false imprisonment, . . . accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon; . . . [c]ommitted to hold the victim for ransom or reward . . . ; or [w]here the victim suffers serious bodily injury.

Tenn. Code Ann. § 39-13-305(a)(1), (a)(3), (a)(4). False imprisonment occurs when a person "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." Tenn. Code Ann. § 39-13-302(a). As used in the kidnapping statutes, unlawful means "accomplished by force, threat, or fraud." Tenn. Code Ann. § 39-13-301(2). In addition, one may be held criminally responsible for an offense committed by another's conduct if: "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense." Tenn. Code Ann. § 39-11-402(2).

Although the State pursued a theory at trial that the defendant and others committed the especially aggravated kidnapping by holding the victim for ransom and/or by accomplishing the kidnapping by use of a deadly weapon, the jury rejected those theories and convicted the defendant on the basis that the victim suffered serious bodily injury. Therefore, our analysis focuses on that particular element. A serious bodily injury is bodily injury involving "[a] substantial risk of death; [p]rotracted unconsciousness; [e]xtreme physical pain; [p]rotracted or obvious disfigurement; or [p]rotracted loss or substantial impairment of a function of a bodily member, organ or mental faculty." Tenn. Code Ann. § 39-11-106(a)(34).

The evidence at trial clearly showed, specifically by the defendant's own testimony, that the defendant confined the victim unlawfully and interfered substantially with her liberty. The defendant testified that when he arrived at the tire shop he saw the victim with her hands bound behind her back and with duct tape across her hands and mouth. He then testified that he drove the U-Haul truck, with the victim in the back, to a motel and then sat with the victim for approximately ten hours. These actions clearly show that the defendant unlawfully confined the victim so as to interfere substantially with her liberty, thereby satisfying the elements of false imprisonment.

There was additional evidence introduced that would allow a rational trier of fact to conclude that the defendant acted with the intent to promote or assist in the commission of the kidnapping. The defendant's return the next morning implies his continuing intent to promote or assist in the kidnapping. The defendant assisted in loading the body into the U-Haul truck and then drove the truck to Mississippi and helped unload it.

The evidence in this case of serious bodily injury is clear. The victim here suffered the ultimate serious bodily injury, death. The duct tape around her entire head resulted in her suffocating to death. By having her ability to breath disrupted and thereby her body being deprived of oxygen, the victim suffered a substantial impairment of a function of a bodily organ. Therefore, we conclude that sufficient evidence exists to find the defendant criminally responsible for especially aggravated kidnapping.

3. Conspiracy to Commit Felony Murder

Finally, we address the defendant's conviction for conspiracy to commit felony murder. In Tennessee, a conspiracy is committed

> if two (2) or more people, each <u>having the culpable mental state required for the offense which is the object of the conspiracy and each acting for the purpose of promoting or facilitating commission of an offense</u>, agree that one (1) or more of them will engage in conduct which constitutes such offense.

Tenn. Code Ann. § 39-12-103(a) (emphasis added). A first degree felony murder is "[a] killing of another committed in the perpetration of or attempt to perpetrate any first degree murder, arson, rape, robbery, burglary, theft, kidnapping, aggravated child abuse, aggravated child neglect or aircraft piracy." Tenn. Code Ann. § 39-13-202(a)(2). Furthermore, "[n]o culpable mental state is required for conviction under Subdivision (a)(2) (felony murder) . . . except the intent to commit the

-7-

enumerated offenses or acts in such subdivisions." Tenn. Code Ann. § 39-13-202(a). In essence, a first degree felony murder, unlike a first degree premeditated and intentional murder, is an unintentional killing. See, e.g., State v. Buggs, 995 S.W.2d 102, 107 (Tenn. 1999); State v. Kimbrough, 924 S.W.2d 888, 890 (Tenn. 1996).

In State v. Kimbrough, our Supreme Court addressed the issue of whether attempt to commit felony murder is an offense in Tennessee and held that "the offense of attempted felony murder does not exist in Tennessee." Kimbrough, 924 S.W.2d at 889. The Court reasoned that "a charge of attempted felony murder is inherently inconsistent, in that it requires that the actor have intended to commit what is deemed an unintentional act." Id. We face substantially the same situation here: for one to have conspired to commit a felony murder, one must have intended to commit what is deemed an unintentional act. Therefore, we conclude that conspiracy to commit felony murder, like attempted felony murder, is not an offense in Tennessee. Accordingly, we reverse the defendant's conviction for conspiracy to commit felony murder.

## **Conclusion**

After extensive review of the record before us, we hold that the evidence at trial was sufficient to support a conviction for felony murder and especially aggravated kidnapping. We further hold that conspiracy to commit felony murder is not a recognizable offense in Tennessee and reverse and dismiss the defendant's conviction for conspiracy to commit felony murder.

_____
JOHN EVERETT WILLIAMS, JUDGE