IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 9, 2020

## STATE OF TENNESSEE v. JESUS ALFONSO CASTILLO

**Appeal from the Circuit Court for Rutherford County**
No. F-75227A      Royce Taylor, Judge

_____

### No. M2019-01256-CCA-R3-CD

_____

Defendant, Jesus Alfonso Castillo, was indicted by a Rutherford County Grand Jury along with four co-defendants for conspiracy to sell over 300 grams of methamphetamine in a drug free zone. Defendant was also indicted for delivery of over 300 grams of methamphetamine in a drug free zone and possession of over 300 grams of methamphetamine in a drug free zone. The second and third counts and the drug free zone enhancement were dismissed prior to trial. A jury convicted Defendant on the conspiracy count. The trial court imposed a fifteen-year sentence to be served in confinement. Defendant filed a motion for new trial that was denied by the trial court. Defendant timely appeals whether the trial court had territorial jurisdiction and whether venue was proper. Defendant further argues the evidence was insufficient to support his conviction. After a review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT L. HOLLOWAY, JR., JJ., joined.

Derek R. Howard, Murfreesboro, Tennessee, for the appellant, Jesus Alfonso Castillo.

Herbert H. Slatery III, Attorney General and Reporter; T. Austin Watkins, Assistant Attorney General; Jennings H. Jones, District Attorney General; and John Zimmermann, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

*Facts and Procedural History*

In December 2014 and January 2015, Metro Nashville Police Department and the United States Drug Enforcement Agency ("DEA") became aware of a new form of methamphetamine being sold in the Nashville area that was in the form of a "long glass shard." James Ritchie was arrested as part of the investigation in to the new form of methamphetamine. Mr. Ritchie agreed to work as an informant. As part of his agreement, Mr. Ritchie purchased methamphetamine from Matthew Simonds.

After the controlled purchase, Mr. Simonds was arrested. Investigators searched Mr. Simonds's home and storage unit that were located in LaVergne, Rutherford County. The storage unit contained $85,000 in cash, over 300 grams of methamphetamine, and a motorcycle that was titled to Peter Getzinger. Mr. Simonds agreed to cooperate with the investigation and revealed that Mr. Getzinger lived in Atlanta and supplied him with methamphetamine. Mr. Simonds sold methamphetamine from his house in Rutherford County as well as his workplace in Davidson County. Mr. Simonds arranged a purchase from Mr. Getzinger. Mr. Getzinger was arrested at a rest stop in Rutherford County on his way to conduct the transaction with Mr. Simonds. The arresting officers found over 300 grams of methamphetamine in Mr. Getzinger's vehicle.

Mr. Getzinger also agreed to be an informant for law enforcement. Mr. Getzinger lived in Atlanta and purchased methamphetamine from Chris Holt and Defendant, whom he knew only as "Poncho" at the time. Mr. Getzinger had provided methamphetamine to Mr. Simonds between five and seven times over a year-long period. Mr. Getzinger delivered the drugs to Mr. Simonds at various locations in Tennessee, usually meeting near Chattanooga, but on at least one occasion, Mr. Getzinger delivered the drugs to Mr. Simonds's residence in LaVergne.

Mr. Getzinger had known Mr. Holt for about five years. Mr. Getzinger's previous supplier was arrested so Mr. Getzinger contacted Mr. Holt who offered him "a pretty good deal on quantity." Mr. Getzinger informed Mr. Holt that his buyer was in Tennessee. Mr. Holt did not always deliver the drugs to Mr. Getzinger, but he arranged for Mr. Getzinger to meet Defendant to pick up the methamphetamine. Mr. Getzinger and Defendant met on more than one occasion, in Atlanta, to exchange methamphetamine for cash. On at least one occasion, Defendant "fronted" the methamphetamine to Mr. Getzinger with the understanding that he would be paid within a week. Mr. Getzinger only had Mr. Holt's phone number. Mr. Holt did not want Mr. Getzinger to have Defendant's phone number because he did not want Mr. Getzinger buying directly from Defendant. Although Mr. Holt delivered the methamphetamine that Mr. Getzinger brought to Rutherford County, Defendant was aware that Mr. Getzinger's buyer was located in Tennessee. Defendant provided the drugs to Mr. Getzinger on multiple trips when Mr. Getzinger met Mr. Simonds near Chattanooga.

On March 25, 2015, Mr. Getzinger arranged a controlled purchase with Mr. Holt. Mr. Getzinger agreed to meet Defendant and Mr. Holt at a Wendy's Restaurant near Defendant's apartment. They had met at this location previously. Investigators searched Mr. Getzinger and his car to make sure he had no other drugs or money. Investigators provided Mr. Getzinger with $10,000 of marked cash to purchase the methamphetamine. Investigators also wired Mr. Getzinger so they could monitor and record the meeting between Mr. Getzinger, Mr. Holt, and Defendant.

Mr. Getzinger and Defendant met at Wendy's but Mr. Holt did not show up. Upon meeting, they discussed the high price of methamphetamine. When talking about the amount of methamphetamine being purchased, Mr. Getzinger told Defendant, "I go up to Tennessee every other week." Mr. Getzinger explained that his buyer in Tennessee could only sell so much methamphetamine at one time and that Mr. Getzinger had to hold on to some of it for as much as a month or more. Mr. Getzinger and Defendant asked each other about their families. Eventually, Defendant gave Mr. Getzinger the key to his truck, and Mr. Getzinger, alone, went to inspect the drugs. Mr. Getzinger came back inside the restaurant and gave Defendant the $10,000 in a Wendy's sack. They discussed why Mr. Holt had not arrived, and Defendant said Mr. Holt was stuck in traffic. Defendant then asked Mr. Getzinger, "When you leaving for Tennessee? You leave tonight?" Mr. Getzinger responded that he would leave the next day. Mr. Holt never arrived to the meeting, so Mr. Getzinger and Defendant left. Mr. Holt called Mr. Getzinger shortly after the meeting and asked about the quality of the methamphetamine. Mr. Holt indicated that he was going to Defendant's apartment to buy half a kilogram of methamphetamine.

Investigators had Defendant's apartment under surveillance. Defendant returned to his apartment after the meeting with Mr. Getzinger. A short time after he returned, a black car parked in front. Defendant walked out with a white bag and got into the car. He got out a short time later without the bag. The black car drove to a parking lot across the street from the Wendy's and parked next to a green truck. An officer was in the same parking lot because he had been observing Mr. Getzinger and Defendant at Wendy's. The driver of the truck got into the black car. When he got out of the car, he had a white bag. A Georgia state trooper stopped the green truck, and methamphetamine was found inside the white bag. Mr. Holt was driving the black car. He was also stopped and arrested. He identified Defendant as his methamphetamine supplier.

Defendant left his apartment and was stopped and arrested. He had $6000 of the marked cash from the controlled buy with Mr. Getzinger in his pocket. A search of Defendant's apartment yielded the remaining $4000 in marked cash, methamphetamine, digital scales, a cutting agent, a handgun, and ammunition.

A Rutherford County Grand Jury indicted Defendant, Mr. Holt, Mr. Getzinger, Mr. Simonds, and Mr. Ritchie for conspiracy to sell over 300 grams of methamphetamine in a drug free zone. Defendant was also indicted for delivery and possession of over 300 grams of methamphetamine; these indictments and the drug free zone enhancement were dismissed prior to trial. After a trial, a jury found Defendant guilty of conspiracy to sell over 300 grams of methamphetamine. The trial court sentenced Defendant to fifteen years' incarceration. A motion for new trial was filed, and the trial court denied the motion. It is from the denial of this motion that Defendant now appeals.

*Analysis*

Defendant argues that the State did not have jurisdiction over Defendant sufficient to charge him in Rutherford County. Defendant further argues that the evidence submitted at trial is insufficient to support his conviction. The State argues that the trial court had jurisdiction and the venue was proper and that the proof is sufficient to support Defendant's conviction for conspiracy for the sale of methamphetamine.

*I. Jurisdiction and Venue*

Defendant argues that the trial court did not have territorial jurisdiction because the conspiracy did not happen in Rutherford County, Tennessee. Defendant further argues that Rutherford County was not the proper venue. The State argues that the trial court had jurisdiction because at least one element of the offense occurred in Rutherford County.

"It is elementary that before a court may exercise judicial power to hear and determine a criminal prosecution, that court must possess three types of jurisdiction: jurisdiction over the defendant, jurisdiction over the alleged crime, and territorial jurisdiction." *State v. Legg*, 9 S.W.3d 111, 114 (Tenn. 1999). Our supreme court has held that "when an offense is continuing in nature and has continued into Tennessee from another state, the offense is deemed to have both commenced and consummated anew in Tennessee so long as any essential element to the offense continues to be present in Tennessee." *Id*. at 116. This is because the criminal laws of a state have no power beyond the state's territorial limits. *Id*. at 114. Under article I, section 9 of the Tennessee Constitution, the accused has the right to a trial "by an impartial jury of the County in which the crime shall have been committed. . . ." Tennessee Code Annotated section 39-11-103 addresses jurisdiction in those cases in which a crime is committed in multiple states: "When an offense is commenced outside of this state and consummated in this state, the person committing the offense is liable for punishment in this state in the county in which the offense was consummated, unless otherwise provided by statute." T.C.A. §

39-11-103(b)(1). The statute provides that it is not a defense that the accused was not present in this state for the consummation of the offense if the accused used "[a]n innocent or guilty agent" or "[o]ther means proceeding directly from the person." T.C.A. § 39-11-103(b)(2). Likewise, "[w]hen the commission of an offense commenced within this state is consummated outside of its boundaries, the offender is liable to punishment in this state in the county where the offense was commenced." T.C.A. § 39-11-103(c). When separate elements of an offense are committed in separate counties, "the offense may be prosecuted in either county." T.C.A. § 39-11-103(d).

"Territorial jurisdiction, i.e., that the offenses charged occurred in the State of Tennessee, is a more fundamental concern than venue and recognizes that a 'state's criminal law is of no force and effect beyond its territorial limits.'" *State v. Willard Hampton*, No. W2018-00623-CCA-R3-CD, 2019 WL 1167807, at *6 (Tenn. Crim. App. Mar. 12, 2019) (quoting *Legg*, 9 S.W.3d at 114), *no perm. app. filed*. Like venue, territorial jurisdiction is a factual question for the jury's determination. *State v. Beall*, 729 S.W.2d 270, 271 (Tenn. Crim. App. 1986). However, territorial jurisdiction, unlike venue, must be proven beyond a reasonable doubt. *Id.*; *see also Willard Hampton*, 2019 WL 1167807, at *6; *State v. Kenneth Fleming*, No. W2016-01017-CCA-R3-CD, 2018 WL 1762208, at *6 (Tenn. Crim. App. Apr. 12, 2018), *no perm. app. filed*; *State v. Charles E. Shifflett, Sr.*, No. E2006-02162-CCA-R3-CD, 2008 WL 1813106, at *12 (Tenn. Crim. App. Apr. 23, 2008), *perm. app. denied* (Tenn. Oct. 14, 2008).

Here, Defendant was indicted for conspiracy to sell over 300 grams of methamphetamine. A criminal conspiracy requires an "overt act in pursuance of the conspiracy." T.C.A. § 39-12-103(d). In drug conspiracy cases, transportation of the drug is an overt act in furtherance of the conspiracy. *See State v. Martinez*, 372 S.W.3d. 598 607 (Tenn. Crim. App. Oct. 27, 2011) *perm. app. denied* (Tenn. Mar. 9, 2012). Mr. Getzinger transported methamphetamine from Atlanta to Rutherford County. Therefore, Tennessee has territorial jurisdiction so long as any essential element occurred in this state. Further, venue is proper in any county where an element of the offense occurs. *See* Tenn. R. Crim. P. 18(b). Defendant is not entitled to relief.

## *II. Sufficiency of Evidence*

Defendant argues that the evidence presented at trial was insufficient to support his convictions. The State maintains that the evidence was sufficient to support the convictions.

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is

whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Id.* (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). Therefore, the prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.* The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

It is an offense to knowingly sell methamphetamine. T.C.A. § 39-17-417(a)(3) and T.C.A. § 39-17-434(a)(3). A person "acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." T.C.A. § 39-11-302(b). Conspiracy is defined as:

> (a) The offense of conspiracy is committed if two (2) or more people, each having the culpable mental state required for the offense that is the object of the conspiracy, and each acting for the purpose of promoting or facilitating commission of an offense, agree that one (1) or more of them will engage in conduct that constitutes the offense.

> (b) If a person guilty of conspiracy, as defined in subsection (a), knows that another with whom the person conspires to commit an offense has conspired with one (1) or more other people to commit the same offense, the person is guilty of conspiring with the other person or persons, whether or not their identity is known, to commit the offense.

> (c) If a person conspires to commit a number of offenses, the person is guilty of only one (1) conspiracy, so long as the multiple offenses are the object of the same agreement or continuous conspiratorial relationship.

(d) No person may be convicted of conspiracy to commit an offense, unless an overt act in pursuance of the conspiracy is alleged and proved to have been done by the person or by another with whom the person conspired.

(e)(1) Conspiracy is a continuing course of conduct that terminates when the objectives of the conspiracy are completed or the agreement that they be completed is abandoned by the person and by those with whom the person conspired. The objectives of the conspiracy include, but are not limited to, escape from the crime, distribution of the proceeds of the crime, and measures, other than silence, for concealing the crime or obstructing justice in relation to it.

T.C.A. § 39-12-103(a) - (e)(1).

"Though venue is not an element of the offense which must be proved beyond a reasonable doubt, it is a jurisdictional fact which must be proved by a preponderance of the evidence." *Harvey v. State*, 376 S.W.2d 497, 498 (Tenn. 1964). Venue may be established by direct or circumstantial evidence or a combination of both. *See State v. Smith*, 926 S.W.2d 267, 269 (Tenn. 1995).

In this case, the evidence shows that Defendant was part of an ongoing endeavor to sell methamphetamine. The evidence shows that at least five links of the scheme chain were discovered by law enforcement. The chain starts with Mr. Ritchie, who lived in Nashville. It then goes to Mr. Simonds, who sold methamphetamine in both Nashville and at his home in Rutherford County. Mr. Getzinger sold methamphetamine to Mr. Simonds. The evidence shows that Mr. Getzinger sold the drugs to Mr. Simonds in Rutherford County at least once, and Mr. Getzinger attempted to sell to Mr. Simonds another time but was arrested before he could complete the transaction. Mr. Simonds was Mr. Getzinger's sole buyer in Tennessee. While Defendant was selling the drugs to Mr. Getzinger on March 25, 2015, Defendant was recorded asking Mr. Getzinger if he goes to Tennessee every other week to deliver methamphetamine to his buyer. Later in the recording Defendant asks Mr. Getzinger "[w]hen you leaving for Tennessee? You leave tonight?"

Although Mr. Getzinger always placed his order with Mr. Holt, Defendant supplied the methamphetamine directly to Mr. Getzinger on more than one occasion. Defendant and Mr. Getzinger met several times before the controlled buy at Wendy's even knowing details about each other's personal lives. "Once a party knowingly and

voluntarily joins into a conspiracy, even if he comes in after the conspiracy is formed, he becomes a principal." *State v. Hodgkinson*, 778 S.W.2d 54, 58 (Tenn. Crim. App. 1989).

The evidence shows that Defendant supplied methamphetamine to Mr. Getzinger at the direction of Mr. Holt. The evidence shows that the weight of methamphetamine involved is over 300 grams. Defendant knew that methamphetamine was delivered to Tennessee by Mr. Getzinger. Mr. Getzinger delivered the methamphetamine to Mr. Simonds in Rutherford County. Mr. Simonds sold the methamphetamine to Mr. Ritchie. Defendant supplied the methamphetamine to Mr. Getzinger on more than one occasion. A rational jury could conclude that Defendant was in an ongoing conspiracy to sell methamphetamine with Mr. Holt, Mr. Getzinger, Mr. Simonds, and Mr. Ritchie, that an element of the offense took place in Rutherford County, and that Defendant took an overt step in furtherance of the conspiracy by delivering the methamphetamine to Mr. Getzinger. A conspirator does not need to know the identity of all other conspirators. T.C.A. § 39-12-103(b). The evidence established a conspiracy scheme chain, filled with overt acts, which found Defendant a strong link in the loop. Defendant is not entitled to relief.

*Conclusion*

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
TIMOTHY L. EASTER, JUDGE